STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. DOMINIC PISCOPO, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted October 15, 1974—Decided November 21, 1974.

258

Before Judges Carton, Crane and Kole.

*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney for appellant (*Mr. Martin F. Siegal,* Assistant Prosecutor, of counsel and on the brief).

*Mr. Michael A. Querques,* attorney for respondent (*Mr. Larry Bronson* of counsel).

Per Curiam. The State appeals, pursuant to leave granted, from an order of the trial court setting aside a jury verdict finding defendant guilty of possession of lottery slips and knowingly engaging as an employee of a lottery, and from an order granting a new trial. A previous trial ended in mistrial when the jury reported it was unable to come to a verdict.

The State's proofs were to the following general effect: It was shown that defendant had been kept under surveillance on three separate occasions in May 1972 when he met, each time in the vicinity of Montclair Avenue and Parker Street in Newark, with one Abrusio, known to be a pick-up man for a numbers operation. On each occasion the meetings took place in automobiles registered to members of defendant's family and on each occasion Abrusio was observed to carry a brown paper bag or a bag wrapped in newspaper into the car occupied by defendant.

On June 14, 1972 State Police, armed with a search warrant, conducted a search of the vehicle occupied by defendant after having again observed Abrusio enter the vehicle with a paper bag. They discovered some empty paper bags and a paper bag, similar to that carried by Abrusio, which contained betting slips. A partial tabulation indicated that the lottery play contained in the bag exceeded $5,000. Abrusio at-

tempted to flee from the approaching police but was quickly apprehended.

On defendant's case Abrusio testified to the effect that the bag containing the lottery play belonged to him; that defendant was unaware of what was in it; that he met defendant in order to repay a loan, and that the bag, which was on his lap, fell to the ground outside the car when he attempted to flee from the police.

The jury returned a verdict of guilty on both charges against defendant. The trial judge later granted defendant's motion for a new trial.

■ Defendant raises the threshhold question of whether the State has a right to appeal. *State v. Sims,* 65 *N. J.* 359 (1974), decided after this case was tried, indicates that the State may seek leave to appeal from any new trial order granted in a criminal case, although such leave should not always be granted. *Id.* at 373.

Leave to appeal was granted to the State in this case prior to the date *Sims* was decided. In light of the principles enunciated in *Sims,* we believe that order was proper and see no occasion for reconsideration of our determination. We note that defendant did not seek a review of this court's interlocutory order granting such leave.

The sole ground on which the trial judge granted defendant's motion for new trial was the prosecutor's action in calling defendant's wife, in the presence of the jury, as a witness for the State. The question before this court is whether that action by the prosecutor constituted a valid basis for setting aside the jury verdict.

■ The great majority of the jurisdictions which have considered this problem has held that it is improper for the prosecutor to call defendant's spouse as a witness under such circumstances. However, most of such courts hold that such action does not require a reversal as a matter of law, but that each case must be determined on the basis of the particular circumstances. See 76 *A. L. R.* 2d 920 (1961) where the cases are collected. We are of the opinion that

the latter is the proper approach and best designed to achieve a just result. We shall consider the present case on that basis.

*Evid. R.* 23(2) specifically allows the exercise of the marital privilege in criminal actions. *Evid. R.* 39 prohibits the court and counsel from commenting on the exercise of a privilege not to testify or to prevent another from doing so. It provides, in pertinent part:

> * * * [I]f a privilege is exercised not to testify or to prevent another from testifying, either in the action or with respect to particular matters, or to refuse to disclose or to prevent another from disclosing any matter, the judge and counsel may not comment thereon, no presumption shall arise with respect to the exercise of the privilege, and the trier of fact may not draw any adverse inference therefrom. In those jury cases wherein the right to exercise a privilege as herein provided may be misunderstood and unfavorable inferences drawn by the trier of fact, or be impaired in the particular case, the court, at the request of the party exercising the privilege, may instruct the jury in support of such privilege.

The language of this rule indicates that while the fact of the exercise of the privilege should not be disclosed to the jury against the wishes of the one exercising it, if such knowledge does come to the jury's attention, instructions may be given at his request to cure any potential adverse inference.

While the rule itself makes no provision for procedures to be followed in situations where a privilege may be exercised, proper procedures were outlined in *State v. Anderson,* 35 *N. J.* 472, 486–488 (1961). In *Anderson* Chief Justice Weintraub pointed out that an objection to testimony by a spouse should be heard outside the presence of the jury. When the prosecutor wishes to call the spouse and is uncertain whether the spouse intends to exercise the privilege of not testifying or whether the accused will consent to such testimony, the proper procedure is for the prosecution to inquire, outside the presence of the jury, whether the marital privilege will be invoked. See *State v. Cullen,* 103 *N. J. Super.* 360 (App. Div. 1968), and *State v. Fournier,* 91 *N. J. Su-*

*per.* 477 (App. Div. 1966), cases concerning exercise of the privilege against self-incrimination.

It is therefore clear that the prosecutor's action in calling defendant's wife as a witness, in the presence of the jury, was improper. It remains to consider whether, under the circumstances of this case, the calling of Mrs. Piscopo was of such prejudicial nature as to warrant the granting of a new trial. When Mrs. Piscopo's name was announced as the next witness, the court immediately excused the jury. It is significant that the court at that point concluded that defendant had sustained no prejudice and denied a motion for mistrial. The court then promptly and emphatically instructed the jury to disregard the incident.

It is difficult to perceive how this brief and fleeting incident could give rise to any real prejudice to defendant. However, the court in its opinion setting aside the conviction and granting a new trial, made the following comments:

* * * When [Mrs. Piscopo, defendant's wife] heard her name, she rose from the seat which she occupied in the courtroom. The defendant's attorney immediately objected and the court dismissed the jury. * * *

* * * The jury could not help but draw harmful inferences from the vivid scene which took place and the subsequent failure of the wife to testify. It is possible that this action did substantially sway the thinking processes of the jury so as to affect the defendant's substantial rights. Courts should not permit this type of procedure.

This conclusion is in marked contrast with that reached initially by the trial court. In the later statement the court seems to rely on the conclusion that the prosecutor's conduct was intentional and done for the purpose of compelling the invocation of the privilege in the presence of the jury. The prosecutor's explanation was that he intended to inquire of her where she currently resided and whether she had an automobile registered in her name, and whether it was a 1971 Cutlass. That evidence was in substance already before the jury and thus would have been, at best, cumulative. This circumstance and the fact that the witness was privileged not

to testify at all against her will or without defendant's consent strongly supports the court's conclusion that the action was done deliberately to prejudice defendant. If such was the case, the prosecutor's conduct was highly improper and cannot be condoned.

Nevertheless, it does not follow that defendant was entitled to a new trial even if such was the purpose of the prosecutor. We see no sound reason why a defendant in a criminal trial should benefit from such action unless it appears that defendant was prejudiced by it. There are other more appropriate and effective remedies for reviewing the propriety of attorneys' conduct in court.

Here the name of defendant's wife was simply announced as that of a prospective witness. She did not testify. The record does not show that the jury actually became aware that defendant was exercising his privilege not to have her testify and that defendant did not consent to her doing so. Nor are we convinced that the jury would necessarily draw the inference that the privilege had been exercised from the wife's subsequent failure to testify, especially in view of the language of the curative instruction from the court that it "wouldn't permit" her to testify.

Under all these circumstances, we see no prejudice accruing to defendant which would warrant the granting of a new trial. In this connection, we note that the evidence against the defendant was very strong and that the possibility of an unjust result resulting from the prosecutor's action was very remote.

Reversed.